UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Aaron Etzler, *et al.*,

    Plaintiffs,

    v.

City of Cincinnati, *et al.*,

    Defendants.

Case No. 1:07-cv-1035

Judge Michael R. Barrett

## OPINION & ORDER

This matter is before the Court upon Defendants' Motion for Summary Judgment (Doc. 118) and Plaintiffs' Motion for Partial Summary Judgment (Doc. 133). The parties filed Responses (Docs. 138, 136) and Replies (Docs. 140, 141).

**I. Background**

The underlying facts of this case are undisputed. Plaintiffs Aaron Etzler ("Etzler"), Malek Investments, LLC ("Malek Investments"), Sarah Properties, LLC ("Sarah Properties"), and Sarlek Properties, LLC ("Sarlek Properties") are current or former owners of properties located within the City of Cincinnati which have been ordered vacated or to remain vacant until code violations on the properties are remedied.[1]

Under the City's Vacant Building Maintenance License ordinance ("VBML Ordinance"), the Director of the City's Department of Building and Inspections may

---

[1]Sarlek Properties and Malek Investments no longer own real property subject to the VBML ordinance. (Doc. 134, Joint Stipulations of Fact, ¶¶ 39, 58).

order any building or portion of any building vacated or to remain vacated for the following reasons:

> Code violations: When a building is occupied, or any work, operation or construction is performed therein or thereon in violation of any of the provisions of this Code.
>
> Unsafe or unsanitary building: When in the opinion of the director of buildings and inspections the building is unsafe or unsanitary.
>
> Noncompliance: When the owner, agent, person in control, or tenant fails or refuses to comply with any lawful order issued by the director of buildings and inspections.

Cincinnati Mun. Code §§ 1101-65.1.1 to 1101-65.1.3. The Ordinance also provides:

> Every order of vacation shall be in writing and shall be served upon the owner, agent, person in control, or tenant, stating the reason for the order or vacation and directing that the building or portion of the building, if it is occupied, be vacated by a specified time. The order to vacate shall provide instructions for obtaining a vacated building maintenance license ("VBML") or suspension of VBML requirements and, if the building is an historic structure or a structure within an Historic Landmark or District, the order shall indicate such and provide instructions for obtaining a certificate of appropriateness.

Cincinnati Mun. Code § 1101-67. Within thirty days of the issuance of the initial order to vacate, a property owner is required to apply for a vacated building maintenance license and obtain liability insurance in a specified amount. Cincinnati Mun. Code §§ 1101-77.1 & 1101-77.2.[2] Within sixty days of the application date, the property owner must cause

---

[2]The procedures for applying for a VBML are as follows:

Application for a vacated building maintenance license shall be made on a form provided by the director of buildings and inspections and verified by the owner or person in control. The application shall disclose all measures to be taken to ensure that the building will be kept weathertight and secure from trespassers, safe for entry by police officers and firefighters in times of emergency, and, together with its premises, free from nuisance and in good order. At the time of application, the owner may arrange for a preliminary inspection of the premises by the director in the presence of the owner, or person in control, or an agent of the owner having responsibility for maintenance of the premises. Upon request

the premises to "conform to the minimum standards of safety and structural integrity" set forth in the Building Code. Cincinnati Mun. Code § 1101-77.2. However, the Director may extend this time upon a showing of good cause. *Id.*

The fee for application for the VBML is based on an escalating scale relative to the duration of time the building has been ordered vacated or kept vacated. Cincinnati Mun. Code §1101-129.[3] If the property owner refuses to comply or does not comply within the period stated in the order of notice, the property owner is subject to criminal prosecution for a first degree misdemeanor. Cincinnati Mun. Code §§ 1101-51 & 1101-71.[4] However, the Cincinnati Municipal Code provides that persons aggrieved by an

---

by the owner or person in control, the director shall, after completing the preliminary inspection, issue a report in writing to the owner or person in control specifying the reasons why the premises does not conform with the vacated building maintenance standards set forth in § 1101-79.7. Upon conclusion of the time for compliance and any extension granted pursuant to § 1101-72.1, the director shall conduct a final inspection to determine if the premises conforms with the vacated building maintenance standards set forth in § 1101-79.4. If the owner or person in control fails or refuses to consent to and arrange for an inspection, the director must first obtain a search warrant from a court of competent jurisdiction to authorize inspection of the premises for the purpose of determining the structural integrity of the building.

Cincinnati Mun. Code § 1101-79.1.

[3]The scale is as follows:

- $900 for properties that have been ordered vacated or kept vacant for less than one year;
- $1,800 for properties that have been ordered vacated or kept vacant for at least one year but less than two years;
- $2,700 annually for properties that have been ordered vacated or kept vacant for at least two years but less than five years;
- $3,500 annually for properties that have been ordered vacated or kept vacant for at least five years.

Cincinnati Mun. Code §1101-129.

[4]Cincinnati Municipal Code § 1101-51 provides that "any person, being the owner, agent, or person in control of any building or premises, who violates any provision of this code, or fails to conform to any provision thereof, or fails to obey any order of the director of buildings and

3

order issued pursuant to the VBML Ordinance, may file an appeal with the Board of Housing Appeals. Cincinnati Mun. Code § 1101-83.9.

Plaintiffs have not obtained VBML licenses for their properties. (Doc. 119, Edward Cunningham Aff. ¶¶15-19). With the exception of one payment of $900 by Sarlek, Plaintiffs have not paid the annual VBML fees for their properties. (Id. ¶ 14). While the City commenced a criminal prosecution against Etzler under the VBML Ordinance, the criminal case against Etzler was dismissed. (Doc. 37, ¶ 63).

Plaintiffs claim constitutional violations pursuant to 42 U.S.C. § 1983. As a result of this Court's ruling on Defendants' motions to dismiss, Plaintiffs' only remaining claims are that the VBML Ordinance is void for vagueness; and the VBML Ordinance violates the Eighth Amendment's prohibition against excessive fines. (Doc. 64). Plaintiffs bring these claims against the City, as well as several employees of the City: Michael Cervay, Michael Fehn, Kevin Rhodes, Will Cohn, and Sean Minihan.

## II. Analysis

### A. Motion for Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party has the burden of

---

inspections or his duly authorized agent, shall be guilty of a misdemeanor of the first degree. Each and every day on which such person continues to violate any provision of this code after having once been notified of such violation shall constitute a separate offense."

Sec. 1101-71. - Failure to Comply With Orders.

1101-71.1 General: If, after service of any lawful order from the director of buildings and inspections, the owner, person in control, agent, contractor or other person responsible for the work or violation refuses to comply with such order or does not comply within the period stated in the order of notice, such failure to comply shall constitute a misdemeanor of the first degree punishable as provided for in this Code.

showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the non-moving party. *Id.* at 252. These standards upon which the Court evaluates motions for summary judgment do not change simply because the parties present cross-motions. *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991).

### B. <u>Void-for-vagueness</u>

The void-for-vagueness doctrine is founded in the Due Process Clauses of the Fifth and Fourteenth Amendments. *Belle Maer Harbor v. Charter Twp. of Harrison*, 170 F.3d 553, 556 (6th Cir. 1999) (citing *United States v. Haun*, 90 F.3d 1096, 1101 (6th Cir. 1996). Under the doctrine, an ordinance is unconstitutionally vague if it fails: "(1) to define the offense with sufficient definiteness that ordinary people can understand prohibited conduct, and (2) to establish standards to permit police to enforce the law in a non-arbitrary, non-discriminatory manner." *Id.* (citing *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)). The Sixth Circuit has explained:

> The second prong—providing minimal guidelines to govern the conduct of law enforcement—constitutes the more important aspect of the vagueness doctrine. "This reflects the common sense understanding that the average citizen does not read, at his leisure, every federal, state, and local statute to which he is subject." An enactment imposing criminal sanctions or reaching a substantial amount of constitutionally protected conduct may withstand facial constitutional scrutiny only if it incorporates a high level of definiteness.

*Id.* at 556-57 (citations omitted).

There is no dispute that the VBML Ordinance includes criminal penalties but does not reach constitutionally protected conduct. However, the parties disagree as to whether Plaintiffs' challenge to the VBML Ordinance should be analyzed as a facial or an as-applied challenge. This disagreement is understandable given the Supreme Court's inconsistent treatment of the issue:

> At times the Court has suggested that a statute that does not run the risk of chilling constitutional freedoms is void on its face only if it is impermissibly vague in all its applications, *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982), but at other times it has suggested that a criminal statute may be facially invalid even if it has some conceivable application. *Kolender v. Lawson*, 461 U.S. 352, 358-59 n. 8, 103 S.Ct. 1855, 1859 n. 8, 75 L.Ed.2d 903 (1983); *Colautti v. Franklin*, 439 U.S. 379, 394-401, 99 S.Ct. 675, 685-88, 58 L.Ed.2d 596 (1979).

*Springfield Armory, Inc. v. City of Columbus*, 29 F.3d 250, 251-52 (6th Cir. 1994).[5] However, recently the Supreme Court has clarified: "We consider whether a statute is vague as applied to the particular facts at issue, for '[a] plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others.'" *Holder v. Humanitarian Law Project*, 130 S.Ct. 2705,

---

[5]In another case, the Sixth Circuit explained:

> although our precedents regarding facial challenges outside the First Amendment have been described as "inconsistent," see *Staley v. Jones*, 239 F.3d 769, 790 n. 26 (6th Cir. 2001), it is clear that outside of certain contexts (including the First Amendment and abortion) facial challenges are normally rejected because a person to whom the statute may be constitutionally applied may not challenge the statute on behalf of third parties. *See Amelkin v. McClure*, 205 F.3d 293, 296 (6th Cir. 2000) . . .

*Simon v. Cook*, 261 F. App'x 873, 883 (6th Cir. 2008).

6

2718-19 (2010) (quoting Hoffman Estates, 455 U.S. at 495).[6]

The Supreme Court reiterated that a criminal statute is unconstitutionally vague where it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Id.* at 2718 (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)). However, the Court noted that "perfect clarity and precise guidance have never been required." *Id.* at 2719 (quoting *Williams*, 553 U.S. at 304). Accordingly, the Court concluded that while the scope of the statute at issue "may not be clear in every application . . . the dispositive point here is that the statutory terms are clear in their application to plaintiffs' proposed conduct, which means that plaintiffs' vagueness challenge must fail." *Id.* at 2720.

"The degree of vagueness that the Constitution tolerates-as well as the relative importance of fair notice and fair enforcement-depends in part on the nature of the enactment." *Hoffman Estates*, 455 U.S. at 498. The Supreme Court has "expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe." *Id.* at 498-99; *see also Springfield Armory, Inc. v. City of Columbus*, 29 F.3d 250, 251-52 (6th Cir. 1994) ("When criminal penalties are at stake, as they are in the present case, a relatively strict test is warranted."). However, the Supreme Court has also "recognized that a scienter

---

[6]In *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, the Supreme Court explained:

> A plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others. A court should therefore examine the complainant's conduct before analyzing other hypothetical applications of the law.

455 U.S. 489, 495, (1982) (footnote omitted).

7

requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." *Hoffman Estates*, 455 U.S. at 499 (citing *Colautti v. Franklin*, 439 U.S. at 395); *see also Peoples Rights Org., Inc. v. City of Columbus*, 152 F.3d 522, 534 (6th Cir. 1998) ("Given the criminal penalties available for violation of section 2323.31(A) and the absence of a scienter requirement, we conclude that a relatively stringent review of the City's assault weapons ban is necessary.").

The parties disagree as to whether the VBML includes a scienter requirement. The Sixth Circuit has explained:

> The term "scienter" means "knowingly" and is used to signify a defendant's guilty knowledge. Black's Law Dictionary 1345 (6th ed.1990). It requires that a defendant have some degree of guilty knowledge or culpability in order to be found criminally liable for some conduct.

*Women's Med. Prof'l Corp. v. Voinovich*, 130 F.3d 187, 203 (6th Cir. 1997).

The provision in the VBML Ordinance which imposes criminal penalties for failing to comply with orders reads as follows:

> If, after service of any lawful order from the director of buildings and inspections, the owner, person in control, agent, contractor or other person responsible for the work or violation refuses to comply with such order or does not comply within the period stated in the order of notice, such failure to comply shall constitute a misdemeanor of the first degree punishable as provided for in this Code.

Cincinnati Mun. Code § 1101-71. While this provision does not specifically require some degree of guilty knowledge or culpability, it is difficult to contemplate how the refusal to comply with an order, after service of that order, is not done knowingly. However, even under a relatively stringent standard of review, the Court finds that the VBML Ordinance is not unconstitutionally vague. *Accord Sheffield v. City of Fort*

8

*Thomas, Ky.*, 620 F.3d 596, 614 (6th Cir. 2010) ("even assuming that the Ordinance prohibits both intentional and negligent conduct, this alone does not make it vague; the Ordinance still 'give[s] the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly.'") (quoting *Deja Vu of Cincinnati, L.L.C. v. Union Twp. Bd. of Trustees*, 411 F.3d 777, 798 (6th Cir. 2005).

The Sixth Circuit has set forth the following rules of construction as part of a vagueness challenge to a state or municipal ordinance:

> To interpret a state or municipal ordinance, federal courts look to see whether state courts have spoken on the issue. *See Grayned*, 408 U.S. at 109-11, 92 S.Ct. 2294 (looking first to state court's interpretation of the state statute); *Terminiello v. City of Chicago*, 337 U.S. 1, 6, 69 S.Ct. 894, 93 L.Ed. 1131 (1949) ("We can only take the statute as the state courts read it."). If a state court has not addressed the ordinance at issue, federal courts will look to the "words of the ordinance itself, [ ] the interpretations the [state court] has given to analogous statutes, and, perhaps to some degree, . . . the interpretation of the statute given by those charged with enforcing it." *Grayned*, 408 U.S. at 110, 92 S.Ct. 2294 (footnotes, citations, and internal quotation marks omitted).

*Gaughan v. City of Cleveland*, 212 F. App'x 405, 410 (6th Cir. 2007).  The parties have assured the Court that the VBML Ordinance has not been addresses by a state court, and therefore, this Court will look to (1) the words of the ordinance itself; (2) interpretations of analogous statutes by Ohio courts; and (3) interpretation of the statute given by those charged with enforcing it.

The words in the VBML Ordinance which are at issue are "code violation" and "noncompliance."  The VBML Ordinance provides that both a code violation and noncompliance are among the reasons for the Director of Buildings and Inspections to order any building or portion of any building vacated.

The VBML Ordinance itself defines a code violation as: "When a building is

9

occupied, or any work, operation or construction is performed therein or thereon in violation of any of the provisions of this Code." Cincinnati Mun. Code §1101-65.1.1. The VBML Ordinance also defines noncompliance: "When the owner, agent, person in control, or tenant fails or refuses to comply with any lawful order issued by the director of buildings and inspections." Cincinnati Mun. Code §1101-65.1.3.

Plaintiffs do not dispute that these definitions provide ordinary people with the ability to understand when a building is subject to the VBML Ordinance. Plaintiffs also do not dispute that the Director of Building and Inspections properly found that their properties were subject to the VBML Ordinance and that they were required to apply for a VBML. Plaintiffs' only argument is that the VBML Ordinance lacks standards regarding what constitutes a "code violation" or "noncompliance," and therefore the VBML Ordinance permits City officials to enforce the law in an arbitrary, discriminatory manner.

The Supreme Court has explained that "[a] vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an *ad hoc* and subjective basis, with the attendant dangers of arbitrary and discriminatory application." *Grayned v. City of Rockford*, 408 U.S. 104, 108-09 (1972). Therefore, "[t]he standards of enforcement must be precise enough to avoid 'involving so many factors of varying effect that neither the person to decide in advance nor the jury after the fact can safely and certainly judge the result.'" *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1105 (6th Cir. 1995) (quoting *Cline v. Frink Dairy Co.*, 274 U.S. 445, 465 (1927)).

Plaintiffs have not demonstrated how the VBML Ordinance was applied to them

in an arbitrary and discriminatory manner.[7] Plaintiffs have not set forth the basic facts from which this Court could determine whether the Director of Building and Inspections found Plaintiffs' properties subject to the VBML Ordinance in an *ad hoc* and subjective basis.[8] Instead, Plaintiffs only cite to general statements made by City officials with regards to application of the VBML Ordinance in hypothetical situations. Such evidence is not sufficient to sustain their void-for-vagueness challenge to the VBML Ordinance. Accordingly, Defendants' Motion for Summary Judgment is GRANTED as to Plaintiffs' claim that the VBML Ordinance is unconstitutionally vague and Plaintiffs' Motion for Partial Summary Judgment is DENIED as to their claim that the VBML Ordinance is unconstitutionally vague.

## C. Excessive fine

The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. Plaintiffs argue that the VBML fee is an excessive fine which violates the Eighth Amendment.

The Supreme Court has interpreted the Excessive Fines Clause to apply to civil fines. *Austin v. United States*, 509 U.S. 602, 610 (1993) ("The notion of punishment, as we commonly understand it, cuts across the division between the civil and the criminal

---

[7]In contrast, the City has presented the Manual of Inspection Procedures and Code Enforcement, which provides specific guidelines to use in ordering a building to be vacated or kept vacant. (Docs. 134-1, 134-2, 134-3). While these guidelines could certainly have been applied in an arbitrary or discriminatory manner, Plaintiffs have not provided any evidence to that effect.

[8]Moreover, Plaintiffs never filed an appeal with the Board of Housing Appeals. *See* Cincinnati Mun. Code § 1101-83.9.

11

law.") (quoting *United States v. Halper*, 490 U.S. 435, 447-48 (1989)).[9] The Supreme Court explained that the question is not whether the fine is civil or criminal, but whether it is punishment. *Id.* With regards to making this determination, the Supreme Court has explained that "'a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term.'" *Id.* (quoting *Halper*, 490 U.S. at 448).

If a civil sanction is punitive, it will be found to be excessive under the Eighth Amendment only if it is "grossly disproportional to the gravity of [the] offense." *United States v. Bajakajian*, 524 U.S. 321, 334 (1998). The Supreme Court has explained that "[t]he touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the [fine] must bear some relationship to the gravity of the offense that it is designed to punish." *United States v. Bajakajian*, 524 U.S. 321, 334 (1998).

Therefore, the first question this Court must answer is whether the fee charged for the VBML application constitutes punishment by determining if the VBML application fee is solely remedial, or if the VBML application fee serves, at least in part, retributive or deterrent purposes. The Supreme Court has explained that remedial action is one "brought to obtain compensation or indemnity." *Id.* at 329 (citing Black's Law Dictionary 1293 (6th ed. 1990)). The Supreme Court has also explained that where a monetary penalty provides "a reasonable form of liquidated damages" to the government it is a "remedial" sanction because it compensates the government for lost revenues. *Id.*

---

[9]The Supreme Court's decision in *Halper* was invalidated on other grounds by *Hudson v. United States*, 522 U.S. 93, 98 (1997).

(quoting *One Lot Emerald Cut Stones v. United States*, 409 U.S. 232, 237 (1972) (per curiam)).

Defendants argue that the VBML application fee is based on City Council's estimated costs associated with the vacated buildings, such as conducting inspections, erecting barricades and demolishing buildings. (Doc. 110, Holly Zistler Depo. at 13-16; Doc. 116, Edward Cunningham Depo. at 155, 157). Defendants also point out that the VBML Ordinance provides that the VBML application fee will be refunded if the property is brought into compliance within one year of payment of the fee.[10]

Plaintiffs argue that the purpose of the escalating fee structure is to punish vacant property owners. Plaintiffs also argue that the provision which permits a refund of the fee if the property is brought into compliance only demonstrates that the VBML application fee is a punishment and not designed to cover the City's costs.

The Court concludes that the VBML application fee is not solely remedial. While the fee serves in part to compensate the City for expenses associated with vacated buildings, part of the purpose of the fee is to deter owners from allowing their buildings to be kept in a condition which subjects the building to the VBML Ordinance. Therefore, the Court concludes that the VBML application fee is a "fine" subject to the limitations of the Excessive Fines Clause.

Next, the Court turns to the question of whether this fine is "excessive." *See*

---

[10]Section 1101-129.4 of the Cincinnati Municipal Code provides: "The chief building official or his designee shall refund the fees for a VBML paid if the subject building is brought into compliance with standards of the CBC and approved by the code official for re-occupancy, or the building is demolished and the site restored in accordance with the provisions of §1117-55.1 CBC, free of soil erosion, weeds, litter, and nuisance conditions within one year of payment of the application fee." The Cincinnati Municipal Code also provides that if bringing the building into compliance takes more than one year and the owner can show that the delay occurred for "reasonable cause," the board of housing appeals may refund all or a portion of the fee.

13

*Bajakajian*, 524 U.S. at 334. The Supreme Court has cautioned that "judgments about the appropriate punishment for an offense belong in the first instance to the legislature" and that "any judicial determination regarding the gravity of a particular criminal offense will be inherently imprecise." *Id.* at 336. Accordingly, this Court must uphold a civil fine unless it is "grossly disproportional to the gravity of the defendant's offense." *Id.* at 337

In *Bajakajian*, the Supreme Court ruled that the forfeiture of $357,144 for violating a federal statute prohibiting transportation of more than $10,000 out of the country was unconstitutional. *Id.* at 337.[11] The Court looked at a number of factors in reaching this determination. First, the Court noted that the defendant's crime was "solely a reporting offense" and it would have been permissible for him to transport the currency out of the country if he had reported it. *Id.* The Court also noted that the defendant's violation was unrelated to any other illegal activities. *Id.* at 337-38. The Court also explained that the defendant did not fit into the class of persons for whom the statute was principally designed because he was not a money launderer, drug trafficker or a tax evader. *Id.* at 338. Next, the Court noted that the maximum sentence that could have been imposed upon the defendant was six months, and the maximum fine was $5,000. *Id.* The Court explained that "[s]uch penalties confirm a minimal level of culpability." *Id.* at 339. Finally, the Court noted:

> The harm that respondent caused was also minimal. Failure to report his currency affected only one party, the Government, and in a relatively minor way. There was no fraud on the United States, and respondent caused no loss to the public fisc. Had his crime gone undetected, the Government would have been deprived only of the information that $357,144 had left the country.

---

[11]While a civil forfeiture was at issue in *Bajakajian*, the Supreme Court explained that forfeitures are payments in kind and "thus 'fines' if they constitute punishment for an offense." 524 U.S. at 328.

*Id.* The Court explained that comparing the gravity of the defendant's crime with the amount of the forfeiture, the forfeiture of the $357,144 would be grossly disproportional to the gravity of his offense. *Id.* at 340.

In this case, the "offense" is being the owner of a building ordered in whole or in part vacated or kept vacant by the Director of Buildings and Inspections. The property owner must apply for a VBML and pay the VBML application fee, which are assessed as follows:

- $900 for properties that have been ordered vacated or kept vacant for less than one year;

- $1,800 for properties that have been ordered vacated or kept vacant for at least one year but less than two years;

- $2,700 annually for properties that have been ordered vacated or kept vacant for at least two years but less than five years;

- $3,500 annually for properties that have been ordered vacated or kept vacant for at least five years.

Cincinnati Mun. Code §1101-129.

Unlike *Bajakajian,* the offense in this case is more than just a reporting offense. The Director of Buildings and Inspections is authorized to order a building vacated where there are Building Code violations or the owner fails or refuses to comply with any lawful order issued by the Director. The Court notes that a property owner has several avenues ameliorate the effects of the VBML application fee. First, the Director can rescind an order that a property be vacated if "the reasons for the order of vacation have ceased to exist and that the building or portion of the building and the occupancy thereof are in substantial compliance with law and the orders of the director of buildings and inspections." Cincinnati Mun. Code § 1101-67.2. Second, a property owner may

appeal a vacation order to the Board of Housing Appeals. Cincinnati Mun. Code § 1101-83.9. Third, as discussed above, a property owner may also seek a refund of the VBML application fee. Cincinnati Mun. Code § 1101-129.4. Finally, a property owner may seek an indefinite suspension of the VBML application fee. Cincinnati Mun. Code § 1101-129.5.[12] It is undisputed that Plaintiffs have not taken advantage of any of these provisions.

It is also undisputed that the properties owned by Plaintiffs are subject to multiple code violations. For example, the City has issued thirteen code violation and notices to Etzler for the property owned by Etzler at 1614 Pleasant Street. (Doc. 134, Joint Stipulations of Fact, ¶ 22, Ex. D). In contrast, *Bajakajian* involved a single violation. *See MacLean v. State Bd. of Ret.*, 733 N.E.2d 1053, 1062 (Mass. 2000) (concluding that forfeiture was not excessive where forfeiture was the result of "multiple illegal activities triggering the forfeiture, not a single minor violation, and the offenses occurred over a period of time."); *see also United States v. Emerson*, 107 F.3d 77, 80 (1st Cir.

---

[12] Section 1101-129.5 of the Cincinnati Municipal Code provides:

Appeal for Indefinite Suspension of Fees: The board of housing appeals may indefinitely suspend liability for payment of all or a portion of VBML fees that have been unpaid upon finding:

(1) The owner has transferred or is under contract to transfer the premises to a third party, who is a bona fide purchaser for value; and

(2) The new owner has viable development plans or is otherwise eligible for suspension of VBML requirements in accordance with the provisions of §1101-83.11 CBC, and indefinite suspension of past fees will meaningfully facilitate the redevelopment of the building and will not conflict with the purpose and intent of the VBML ordinance or its fee structure; or

(3) An owner, past owner, or other person held financially responsible for the premises can demonstrate a compelling reason why non-compliance with VBML requirements has been attributable to the acts or omissions of a third party and the relationship between the parties justifies indefinitely suspending the appellant's liability for non-payment.

16

1997) (concluding that fine was not excessive in part because of the defendant's "pattern of persistent disregard of government regulation").

There is also no dispute that the purpose of the VBML is to protect the public from harm caused by vacated buildings. Defendants argue that the VBML fee is not grossly disproportional because the amount collected is only a fraction of the costs the City incurs in securing vacated buildings. Defendants explain that in 2011, the revenue from VBML licensing fees was $160,370.21, but in that same year the City's costs to barricade unsecured vacated buildings was $332,958.30 and the costs to demolish vacated buildings was $1,020,332.31. As a specific example, Defendants point to the collapse of one of Etzler's properties onto a nearby property, which necessitated the demolition of the building. The City's cost for this demolition was $10,000. (Cunningham Aff., ¶ 15).

Plaintiffs argue that the VBML fee is disproportionate to the value of the property itself. Plaintiffs explain the assessed valuations of the Etzler properties are between $15,300 and $13,050. However, as one court has observed, "the 'touchstone' is the value of the fine in relation to the particular offense, not the defendant's means." *United States v. Emerson*, 107 F.3d at 80-81 (quoting *Austin*, 509 U.S. at 627 (Scalia, J., concurring)).

The Court concludes that the proportionality between the fine and the gravity of the associated offense is not constitutionally excessive. Accordingly, Defendants' Motion for Summary Judgment is GRANTED as to Plaintiffs' claim that the VBML Ordinance violates the Eighth Amendment and Plaintiffs' Motion for Partial Summary Judgment is DENIED as to their claim that the VBML Ordinance violated the Eighth

Amendment.

### III. Conclusion

Based on the foregoing, Defendants' Motion for Summary Judgment (Doc. 118) is **GRANTED** and Plaintiffs' Motion for Partial Summary Judgment (Doc. 133) is **DENIED**.  This matter is **CLOSED and TERMINATED** from the docket of this Court.

**IT IS SO ORDERED**.

                                                */s/ Michael R. Barrett*
                                                United States District Judge